UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 108-4 |
| v. | ) | |
| | ) | Hon. Samuel Der-Yeghiayan |
| MARY DOCHEE | ) | |

### GOVERNMENT'S MOTIONS *IN LIMINE*

The United States of America, by its attorney, Patrick J. Fitzgerald, United States Attorney for the Northern District of Illinois, respectfully submits its motions *in limine* seeking pretrial rulings on the admissibility of certain evidence and the propriety of certain arguments, as follows:

**I.      Inadmissibility of Penalties Faced by Defendant**

The government moves this Court to preclude defendant from introducing evidence, making argument, or otherwise mentioning the potential penalties faced by the defendant if convicted. The Seventh Circuit unequivocally has held that "arguing punishment to a jury is taboo." See, e.g., United States v. Richardson, 130 F.3d 765, 778 (7th Cir. 1997); United States v. Lewis, 110 F.3d 417, 422 (7th Cir. 1997); see also United States v. McKenzie, 922 F.2d 1323, 1327 (7th Cir. 1991) (holding that "the sixth amendment requires that a jury determine questions of guilt or innocence; punishment is the province of the Court"). Such argument or evidence concerning punishment is improper because the law is well-settled that the potential penalty faced by a defendant is irrelevant to the jury's determination of guilt or innocence. See, e.g., Shannon v. United States, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to 'reach its verdict without regard to what sentence might be imposed.'"), quoting United States v. Rogers, 422 U.S. 35, 40 (1975); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991) ("It has long been the law that it is inappropriate for a jury to consider or be informed of the

consequences of their verdict."); United States v. McCracken, 488 F.2d 406, 423 (5th Cir. 1974) ("Except where a special statutory provision mandates a jury role in assessment or determination of penalty, the punishment provided by law for offenses charged is a matter exclusively for the court and should not be considered by the jury in arriving at a verdict as to guilt or innocence."). Mention of the potential penalties faced by the defendant would serve only the improper purpose of jury nullification. See, e.g., United States v. Reagan, 694 F.2d 1075, 1080 (7th Cir. 1982) ("'The authorities are unequivocal in holding that presenting information to the jury about possible sentencing is prejudicial.'"), quoting United States v. Greer, 620 F.2d 1383, 1384 (10th Cir. 1980); United States v. Patterson, 1996 WL 54237, at *1 (N.D.Ill. Feb. 8, 1996) (prohibiting discussion of potential penalties in order to avoid possible jury nullification).

## II. Inadmissibility of Forms of Argument or Evidence Designed to Elicit Jury Nullification

The government moves this Court to preclude the defendant from arguing, or otherwise presenting evidence or pursuing lines of inquiry designed to elicit, jury nullification. The law is plain that it is improper for a defendant to suggest in any way that the jury should acquit the defendant even if it finds that the government has met its burden of proof. See, e.g., United States v. Perez, 86 F.3d 735, 736 (7th Cir. 1996) ("An unreasonable jury verdict, although unreviewable if it is an acquittal, is lawless, and the defendant has no right to invite the jury to act lawlessly. Jury nullification is a fact, because the government cannot appeal an acquittal; it is not a right, either of the jury or of the defendant."), citing United States v. Kerley, 838 F.2d 932, 938 (7th Cir. 1988) and United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993); see also United States v. Bruce, 109 F.3d 323, 327 (7th Cir. 1997) ("Jury nullification 'is not to be positively sanctioned by instructions,' but is to be viewed as an 'aberration under our system.'"), quoting United States v. Anderson, 716

F.2d 446, 450 (7th Cir. 1983); see generally Scarpa v. Dubois, 38 F.3d 1, 11 (1st Cir. 1994) (noting that "defense counsel may not press arguments for jury nullification in criminal cases"); Sepulveda, 15 F.3d at 1190 ("Neither court nor counsel should encourage jurors to exercise [nullification] power. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."); United States v. Trujillo, 714 F.2d 102, 105 (11th Cir. 1983) ("Appellant's jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath"); Seventh Circuit Committee Federal Criminal Jury Instructions 1.01 (1980).

Although the government is unable to anticipate each form of "jury nullification" argument or evidence that defendant may seek to interject into this trial, the government does note the following examples:

### A.     Argument or Evidence of "Outrageous Government Conduct"

There is an "increasing tendency in criminal cases to try some person other than the defendant and some issues other than his guilt." United States v. Griffin, 867 F.Supp. 1347, 1347 (N.D. Ill. 1994) (citation omitted). The "thrust of the defense" in these types of cases "is this: the prosecution was not nice or could have done it better and so the jury ought to acquit, whether or not guilt has been proved beyond a reasonable doubt." Id. at 1347. In the face of this increasing tendency to interject themes of "government misconduct" into a defense strategy, courts routinely have granted motions *in limine* "to bar defendants from presenting evidence or making arguments to the jury suggesting that they should be acquitted because the government engaged in misconduct in the course of its investigation." United States v. Shields, 1991 WL 236492, at *3 (N.D. Ill. Aug.

13, 1991); United States v. Finley, 708 F. Supp. 906, 913-914 (N.D. Ill. 1989) (granting motion *in limine* to preclude evidence "which is not relevant to defendants' guilt but is designed only to persuade the jury that defendants should be acquitted because the government engaged in misconduct during its investigation."); United States v. Katz, 1992 WL 137174, at *5 (N.D. Ill. June 15, 1992).

The impropriety of arguing allegations of governmental misconduct to the jury is twofold. First, and most fundamentally, the Seventh Circuit has rejected the outrageous government conduct defense and has held that such claims afford no defense to a criminal prosecution as a matter of law. See United States v. Boyd, 55 F.3d 239, 241-42 (7th Cir. 1995). Boyd is unequivocal in its holding that "outrageous government conduct" is no defense to a criminal charge, and the jury thus should not be exposed to irrelevant allegations of this sort. Second, even before the Boyd decision, this Circuit held that the issue of government misconduct was a matter of law for determination by the court: "the issue of outrageous government conduct is not an issue for the jury." United States v. Swiatek, 819 F.2d 721, 726 (7th Cir. 1987) (noting that every circuit which has considered the issue has held that the issue is not a jury question) (citations omitted); see also Katz, 1992 WL 137174, at *5 ("[T]he government is right in attempting to preclude any argument by [defendant] before the jury that the government's conduct in investigating and prosecuting this case is outrageous."); United States v. D'Arco, 1991 WL 264504 (N.D.Ill. Oct. 18, 1991); Shields, 1991 WL 236492, at *3; Finley, 708 F. Supp. at 913-914.

**B.** **Argument or Questioning about the Motivation for Investigating or Prosecuting this Case**

Evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial. See United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979)

(affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); United States v. Berrigan, 482 F.2d 171, 174-76 (3d Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution"). It is settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. See, e.g., United States v. Goulding, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant"); Katz, 1992 WL 137174, at *7 (granting government's motion in limine to preclude inquiry regarding "[t]he subjective intentions or motivations of the agents involved in this case."); Shields, 1991 WL 236492 at *3 (precluding evidence concerning discussions between supervising agent and cooperating witness and noting, "evidence of conversations between the government and its cooperating witness are immaterial; rather what matters is what the witness said to the defendants.").

### C. Argument or Questioning That the Investigation or Prosecution of this Case Was Racially Motivated

Similarly, defendant should be prevented from advancing forms of argument or questioning designed to interject issues of race (defendant is African American) into this trial. Permitting unsupported and improper argument or questioning of this nature in the presence of the jury risks irreparable prejudice and confusion of the matters at issue. Courts have long noted that "[a]ppeals to racial passion can distort the search for truth and drastically affect a juror's impartiality." United States v. Doe, 903 F.2d 16, 25 (D.C. Cir. 1990).

Not only is there no evidentiary basis for interjecting into this trial allegations of racial animus in the investigation or prosecution of the case, but the law is well-settled that claims of

selective prosecution are to be resolved by the court and not the jury. United States v. Jones, 52 F.3d 924, 927 (11th Cir. 1995); United States v. Washington, 705 F.2d 489, 495 (D.C. Cir. 1983) ("[T]he issue of selective prosecution is one to be determined by the Court."). Likewise, evidence bearing on the government's decision to prosecute is "extraneous and collateral" and thus excluded from trial. United States v. Johnson, 605 F.2d 1025, 1030 (7th Cir. 1979) (affirming the exclusion of evidence offered to show that the "indictment was a political instrument"); United States v. Berrigan, 482 F.2d 171, 174-76 (3rd Cir. 1973) (affirming exclusion of evidence relating to "discriminatory prosecution").

Of course, as a more general matter, it is also settled law that inquiries regarding the subjective intentions or motivations of a government agent are irrelevant to determining the factual guilt or innocence of a defendant. See, e.g., United States v. Goulding, 26 F.3d 656, 667 (7th Cir. 1994) (noting, even in the context of an entrapment defense, it was proper for the trial court not to "allow the defense to mount an inquiry into the mental states of the investigating officers since such an inquiry was irrelevant").

**D.     Family needs**

While the government acknowledges that the defendant is permitted to introduce, through proper methods, limited testimony concerning their backgrounds, the government moves this Court to preclude evidence and argument regarding defendant's family needs, including any arguments or evidence designed either to infer a motive or excuse for defendant's criminal conduct or to invoke sympathies regarding the impact of a conviction upon defendant's family. Such evidence is irrelevant to defendant's factual guilt and is designed for no other purpose than to invoke improper appeals for jury nullification. Accordingly, such evidence or argument is properly excluded. See,

e.g., D'Arco, 1991 WL 26504, at *4 (holding that "no testimony or argument will be allowed regarding the impact of the trial or possible conviction upon a family member"); Shields, 1991 WL 236492, at *4 (granting motion *in limine* precluding "any testimony regarding the possible impact which a conviction might have upon any family member").

### III. Impropriety of Discovery Requests or Commentary Regarding Discovery in Presence of Jury

The government moves to preclude counsel from requesting discovery from witnesses or opposing counsel, moving the Court for such discovery, or otherwise commenting on discovery matters, in the presence of the jury. Such requests from counsel in front of the jury (which are becoming increasingly frequent and theatrical in this district) are inappropriate and may create the impression that one side has suppressed information as a means of seeking an unfair advantage. In fact, as often happens, counsel's requests are ill-founded because the discovery has already been tendered or is not subject to disclosure. Any discovery requests, if appropriate, can easily be made to the Court or opposing counsel outside the presence of the jury with no prejudice resulting to either side. Accordingly, the government moves that requests for discovery or comments relating to discovery be made outside the presence of the jury. This system has been used in other cases – e.g., United States v. Hosseini, et al., 05 CR 254 (Shadur, J.), United States v. Tejeda, et al., 05 CR 194 (Gettleman, J.) – and has worked well. The government believes it is a fair and sensible one to employ here. See generally Thompson v. Glenmede Trust Co., 1996 WL 529693, at *2 (E.D.Pa. 1996) ("Rather than focus on the issues in the case, the jury may instead be misled by the irrelevant side issues of the discovery process. Therefore, the Court will not permit either party to refer to the discovery process in the presence of the jury at trial.").

**IV.     Inadmissibility of Evidence and Argument of Lawfulness and Non-Corrupt Conduct**

If it exists, the government moves the Court to exclude all evidence offered by defendant of her lawfulness and/or non-corrupt conduct, except reputation or opinion evidence offered by character witnesses strictly in accord with the limitations of Federal Rule of Evidence 405(a).[1] Other than testimony from character witnesses fitting within the narrow confines of Rule 405(a), no such evidence is admissible.

In an effort to distract the jury from the charges the defendant faces, defendant may seek to parade witnesses through the courtroom to testify that on some prior occasions the defendant has engaged in legitimate real estate transactions or was otherwise a law-abiding citizen at times. Any evidence or argument of this sort is inadmissible, and the Court should exclude it. The law is clear: "A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on [other] specific occasions." United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) (excluding taped proof that defendants met regularly and did not discuss criminal activity). Evidence of other lawful behavior is irrelevant because acts of honesty do not prove an absence of dishonest acts. See, e.g., id.; United States v. Beno, 324 F.2d 582, 589 (2d Cir. 1963) ("Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant."); United

---

[1] Even evidence offered under Rule 405(a), of course, cannot include specific instances of good conduct: it is limited to a description of the subject's reputation or to a brief statement of opinion, without support from specific instances of conduct. See Advisory Committee Notes to Rule 405 (The rule "contemplates that testimony of specific instances is not generally permissible on direct examination of an ordinary opinion witness to character . . . . [O]pinion testimony on direct in these situations ought in general to correspond to reputation testimony as now given, i.e. be confined to the nature and extent of observation and acquaintance upon which the opinion is based.").

8

States v. Grimm, 568 F.2d 1136, 1138 (5th Cir. 1978) (upholding exclusion of evidence that used car dealer paid for some cars instead of stealing them).

To hold otherwise would be to eviscerate the carefully drafted limitations of Rule 405, which forbids proof of good character through evidence of specific acts where character is not an element of the charge or defense. See Beno, 324 F.2d at 584, 587. Like Rule 403, Rule 405 is intended to prevent the series of wasteful "mini-trials" which would inevitably ensue if the defendant were allowed to pursue this irrelevant line of inquiry. The Advisory Committee Notes for Rule 405 conclude that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time." See, e.g., Grimm, 568 F.2d at 1136 (evidence of lawful transactions "could have complicated the case and confused the jury").

## V. Allegations of Witness Wrongdoing Not Involving Dishonesty

The government has produced to defense counsel, and will continue to produce to defense counsel as necessary, materials setting forth potential impeachment material for some witnesses in this case. In an abundance of caution, the government has produced various materials that do not constitute admissible impeachment, including criminal history reports of some government witnesses. Of course, the mere fact that the government has produced to the defense a fact or an allegation does not render it admissible at trial. By this motion, the government moves this Court to preclude defense counsel from introducing at trial, during the cross-examination of government witnesses, improper impeachment questioning or evidence.

### A. Arrests

The government has disclosed to defense counsel the rap sheets and criminal histories of witnesses it may call at trial (and it will continue to do so if that list changes). Some of these

9

witnesses have been arrested on prior occasions. Evidence of a prior arrest should be precluded in accordance with the strictures of Rules 609 and 608. Federal Rule of Evidence 609 allows for the admission of a witness's felony conviction for purposes of impeachment under certain specified circumstances. Under the Rule, "[f]or the purpose of attacking the credibility of a witness, evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted . . ." Fed. R. Evid. 609. By its express terms, Rule 609 permits evidence only of convictions, not arrests.

      Nor are arrests admissible under Fed. R. Evid. 608(b). Rule 608(b) provides that specific instances of past conduct may be inquired into on cross-examination if and only if they concern the witness's character for truthfulness.[2] Courts have not construed Rule 608(b) to permit cross-examination on prior arrests absent special facts bearing on the witness's character for the specific trait of truthfulness. Thus, in United States v. Dennis, 625 F.2d 782 (8th Cir. 1980), the Eighth Circuit held that a witness may not be cross-examined about an arrest except where Rule 608(b) would permit inquiry into specific acts leading up to the arrest that related to crimes of falsity – e.g., perjury, subornation of perjury, or false pretenses. See also United States v. Sellers, 906 F.2d 597, 603 (11th Cir. 1990). Unless defendant can demonstrate that the conduct underlying the arrest implicates a witness's character for truthfulness (an inquiry that should be done outside the presence of the jury), defendant should be precluded from inquiring into the conduct.

---

   [2] Even then, these past instances may not be proved by extrinsic evidence. See Fed. R. Evid. 608(b).

### B. Facts Underlying Convictions

Possible witnesses in this case have been convicted of felony crimes. Although the fact of a conviction may be admissible, provided the requirements of Rule 609 are met, the underlying details of the conviction are not. See United States v. Zarattini, 552 F.2d 753 (7th Cir. 1977); United States v. Chaverra-Cardona, 669 F. Supp. 1445 (N.D. Ill. 1987). Infusing this evidence into the trial will likely result in mini-trials on issues unrelated to the charged conduct or witness credibility.

### C. Other "Bad Acts" By the Witnesses

To the extent they are known, the government has disclosed, and will continue to disclose to defense counsel, "bad acts" by its witnesses known to the government. Under Rules 611 and 608(b), defendant is permitted to inquire into specific bad acts of the witness only if these acts are probative of truthfulness. See, e.g., United States v. Van Dorn, 925 F.2d 1331 (11th Cir. 1991) (threats made by witness to judicial officers in a prior drug prosecution not relevant to a witness's truthfulness); United States v. McNull, 887 F.2d 448 (3d Cir. 1989) (solicitation to commit crime of violence is not probative of truthfulness); United States v. Bentley, 706 F.2d 1498, 1509-10 (8th Cir. 1983) (evidence of witness's involvement in drug operation not proper impeachment under Rule 608(b)); United States v. Fortes, 619 F.2d 108, 117-18 (1st Cir. 1980) (affirming trial court's refusal to allow cross-examination concerning witness's involvement in sale of cocaine on ground that selling cocaine is not probative of truthfulness or untruthfulness under Rule 608(b)); United States v. Young, 567 F.2d 799, 803 (8th Cir. 1977) (disallowing cross-examination of government witness concerning her alleged offer to pay $10,000 to have her husband killed, because "the proposed question was not relevant to veracity and honesty and would have been highly prejudicial").

So the Court can make the appropriate rulings, the government requests that defense counsel identify the prior conduct about which they intend to cross-examine a given witness and demonstrate how that conduct is probative of truthfulness. This should occur outside the presence of the jury and before a witness testifies at trial, to prevent jury nullification and/or undue prejudice.

### D.     Drug Use by Witnesses

Some of the government's anticipated witnesses may testify that they have used controlled substances in the past. Any inquiry into prior narcotics use by a witness should be limited as set forth below.

The courts of appeals, including the Seventh Circuit, have held that a witness' past drug use is not probative of veracity and, hence, is not a proper subject for cross-examination. See United States v. Neely, 980 F.2d 1074, 1081 (7th Cir.), cert. denied 113 S. Ct. 654 (1992). See also United States v. Robinson, 956 F.2d 1388, 1398 (7th Cir. 1992); Jarrett v. United States, 822 F.2d 1438, 1445-46 (7th Cir. 1987); United States v. Cameron, 814 F.2d 403, 404-405 (7th Cir. 1987); United States v. Sellers, 906 F.2d 597, 602 (11th Cir. 1990); United States v. Phillips, 888 F.2d 38, 40-41 (6th Cir. 1989). As the Court stated in Neely, case law "forbid[s]" character attacks based on the "suggest[ion] . . . that people who have used drugs are more likely to tell lies." 980 F.2d at 1081.

Evidence that a witness has used illegal drugs may be admitted only in the limited instance "where the memory or mental capacity of the witness is legitimately at issue." Cameron, 814 F.2d at 405. For example, in Robinson, the defendants sought to cross-examine two government witnesses – Yager and Yackey – concerning their past drug use. The trial court permitted the cross-examination of Yackey, but barred the cross-examination of Yager. In affirming the evidentiary rulings, the Court stated:

12

> As to Yackey, the [defendants'] objections that cross-examination was unfairly limited is meritless because the district court allowed the [defendants] to demonstrate that drug and alcohol use had caused memory loss. As to Yager, the district court did not abuse its discretion in limiting cross-examination because, in voir dire, the [defendants] did not establish that Yager's drug use had affected his memory of relevant events.

956 F.2d at 1398.

Because of the prejudicial nature of testimony regarding prior drug use, the government requests the court conduct a voir dire of the witness outside the presence of the jury prior to any inquiry as to a witness' prior drug use, before such questions are asked of the witness. See Robinson, 956 F.2d 1388, 1397 (7th Cir. 1992) (relying upon voir dire of witnesses concerning their past drug use to affirm district court's evidentiary rulings). The government, therefore, requests this Court to order defendant to notify the Court, in advance of the witness' testimony, if defendant intends to inquire about prior drug use by the witness, so that a voir dire can be conducted prior to the witness' testimony.

### E. Prior Convictions Over Ten Years Old

Federal Rule of Evidence 609 includes time restrictions on the use of prior convictions to impeach a witness. Rule 609(b) states:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

13

Some of the government's witnesses have convictions that are more than 10 years old and the defendant has not notified the government of her intent to use these convictions. Based on Rule 609(b)'s time constraint of ten years from the date of conviction or date of release, the government is seeking to prevent the defendant from introducing any evidence during this trial of convictions of prosecution witnesses that are more than 10 years old because they are too remote in time to have sufficient probative value to justify their admission into evidence.[3]

## VI. Use of Evidence of Prior Successful Cooperation of Government Witnesses to Rebut Allegations of Bias

The government anticipates that the defendant will, through cross-examination of government witnesses, suggest that cooperators in general, and the testifying cooperators in particular, were biased in favor of the government and would lie to receive a reduced sentence. If the defendant pursues this line of cross-examination, the government seeks to introduce evidence of prior successful cooperation by these government witnesses to rebut allegations of bias directed against them. Specifically, some of these cooperating witnesses have cooperated extensively (and testified at other trials), and their cooperation has led to many successful prosecutions. The Seventh Circuit has upheld the admissibility of this type of rebuttal evidence. See United States v.

---

[3] Rule 609(b) states that "a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date . . ." Fed. R. Evid 609(b). However, the statute is silent at to when the ten year period ends. The Seventh Circuit has implied, although not explicitly stated, that the 10 year period ends when the witness actually testifies at trial (as opposed to the date of defendant's arrest or indictment in the case). *United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir. 1986) (because "Thompson's trial began within ten years of his release from confinement[,]" evidence of his prior conviction was properly admitted. *Thompson*, 806 F.2d at 1339. One district court has expressly held, relying upon the Seventh Circuit's decision in *Thompson*, that the "proper moment to conclude the ten year time period of Rule 609 is at the time a witness testifies at trial or the date when a public record of conviction is offered into evidence at trial." *Trindle v. Sonat Marine Inc.*, 697 F. Supp 879, 881-82 (E.D. PA 1988).

14

Lindemann, 85 F.3d 1232, 1243 (7th Cir. 1996); United States v. Curry, 187 F.3d 762, 766-67 (7th Cir. 1994); United States v. Scott, 267 F.3d 729, 736-37 (7th Cir. 2001).

In Lindemann, the defendant was indicted on wire fraud charges arriving out of a conspiracy to kill horses for pay, allowing the horses' owners to collect the insurance proceeds. 85 F.3d at 1235-36. At trial, the government called a member of the conspiracy, Tommy Burns, who testified that the defendant had arranged for the killing of a particular horse in order to collect the insurance proceeds. Id. When Burns began cooperating with the FBI, he provided information about approximately 30 individuals for whom he had killed horses. Id. at 1242. By the time of the defendant's trial, 90 percent of these individuals had pled guilty. Id.

During cross-examination of Burns, the defense attacked his credibility by suggesting that he "would not have gotten a plea deal if he hadn't come up with the name of a "big fish like [the defendant]." Id. The trial court allowed the government to elicit from Burns on redirect (subject to a limiting instruction) that he had provided information about 30 individuals (including the defendant), 90 percent of whom had already pled guilty. Id.

On appeal, the defendant claimed that the testimony elicited from Burns on redirect amounted to impermissible "bolstering of a witness." Id. In rejecting this argument, the court found that "the defense's suggestion that Burns falsely implicated [the defendant] to obtain a plea deal...was an attempt to show the Burns had a bias," id. at 1243, that is, that Burns had lied about the defendant out of his own self-interest "in order to better the parameters of his plea deal." Id. Noting that extrinsic evidence is admissible to both prove and disprove bias, the court held that the trial court did not abuse its discretion in admitting the evidence concerning Burns' cooperation in other cases:

15

> Burns' successful participation in numerous other cases meant that at the time he was negotiating over his plea deal, he had lots of information to use as bargaining chips. That fact was relevant under the standards of Fed. R. Evid. 402 because it made less probable the assertion that Burns was lying in [the defendant's] case out of self-interest.
>
> Finally, the district court immediately warned the jury that it was not to infer [the defendant's] guilt from the fact that other indicted individuals pleaded guilty. Thus, the evidence was used only to assess Burns' credibility, not as evidence of [the defendant's] guilt.

Id. at 1243-44; accord Curry, 187 F.3d at 766-67 and Scott, 267 F.3d at 736-37.

In Curry, the government "was permitted to explain to the jury that the witness' testimony also had implicated another co-conspirator, who had pleaded guilty." 187 F.3d at 766. The court held that when a cooperating witness's testimony:

> will help the government obtain more than one conviction (through a guilty plea or otherwise), [t]hat is enough to create the multiple `chips' to which Lindemann referred. In addition, [the witness's] history of successful cooperation was relevant evidence under the standards of Federal Rule of Evidence 402 because the fact that she had cooperated against [co-defendant] Pulley, who then pleaded guilty, made it more probable that she was telling the truth about [the defendant].

Id. at 767.

In Scott, the court made clear that the Lindemann doctrine applies when "the defendant ha[s] multiple 'bargaining chips' to use with the government, not that the `chips' [were] related to the same case." 267 F.3d at 736-37 (upholding trial court's decision admitting agent's testimony of cooperating witness's assistance in obtaining indictments and convictions in case unrelated to the case on trial); see also United States v. Penny, 60 F.3d 1257, 1264-65 (7th Cir. 1995) (permissible for government to rehabilitate witness with evidence of the results of his successful cooperation in other investigations after defense had attacked credibility of witness); United States v. Martinez, 775 F.2d 31, 37-38 (2d Cir. 1985); United States v. Lochmondy, 890 F.2d 817, 821 (6th Cir. 1989).

Thus, the government respectfully requests that, if the defendant suggests the government's cooperating witnesses are lying about their motivation for testifying or are biased in favor of the government because of the terms of their plea agreements, the Court allow it to present of evidence of prior successful cooperation of government witnesses to rebut allegations of bias.

## VII. Conclusion

For the aforementioned reasons, the Government respectfully requests that its motions *in limine* be granted.

    Respectfully submitted,

    PATRICK J. FITZGERALD

    United States Attorney

By: /s/ Megan Cunniff Church
    LISA M. NOLLER
    MEGAN CUNNIFF CHURCH
    Assistant United States Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5300

**Certificate of Service**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5 and the General Order on Electric Case Filing (ECF), that the Government's Motions *In Limine* were served on Elliot Samuels, pursuant to the district court's ECF system, on December 5, 2008.

> By: s/Megan Cunniff Church
> MEGAN CUNNIFF CHURCH
> Assistant United States Attorney
> 219 S. Dearborn Street
> 5th Floor
> Chicago, Illinois 60604
> (312) 886-1173